IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| WALTER COREY GORDON, | ) | C/A No. 2:15-cv-02814-MGL-MGB |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| CAROLYN W. COLVIN, | ) | REPORT AND RECOMMENDATION |
| Acting Commissioner of the | ) | |
| Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

Plaintiff Walter Corey Gordon, through counsel, brought this action to obtain judicial review of an unfavorable final administrative decision denying benefits on his October 4, 2013 applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act ("Act"). *See* Section 205(g) of the SSA, as amended, 42 U.S.C. Section 405(g). This matter was referred to the Magistrate Judge for a Report and Recommendation pursuant to Local Rule 73.02(B)(2)(a), D.S.C., and Title 28, United States Code, Section 636(b)(1)(B). For the reasons stated herein, the undersigned recommends that this case be reversed and remanded for a new hearing.

**Procedural History and ALJ's Findings**

The Plaintiff was born June 19, 1981, and was 31 years old on the alleged onset of disability date, February 20, 2013. (R. 194, 196, 21.) The Plaintiff filed for DIB and SSI on October 4, 2013. (R. 194, 196.) The Plaintiff claimed disability due to a broken collar bone and ribs and a right lung collapse. (R. 236.) The Plaintiff's claims were initially denied and denied on reconsideration. (R. 136-40, 142-49.) Following a hearing, the Administrative Law Judge

(ALJ) denied his claim on January 12, 2015. (R. 21-31.)  The Plaintiff has exhausted his administrative remedies through the Appeals Council.  The ALJ's decision is now the Commissioner's final action for purposes of judicial review.  In making the determination that the Plaintiff is not entitled to benefits, the Commissioner adopted the following findings of the ALJ's January 12, 2015 Decision (R. 21-31):

> (1)   The claimant meets the insured status requirements of the Social Security Act through December 31, 2015.
>
> (2)   The claimant has not engaged in substantial gainful activity since February 10, 2013, the amended alleged onset date (20 CFR 404.1571 *et seq*., and 416.971 *et seq*.).
>
> (3)   The claimant has the following severe impairments: costochondritis, asthma and pulmonary fibrosis (20 CFR 404.1520(c) and 416.920(c)).
>
> (4)   The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).
>
> (5)   After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c). Specifically, the claimant can lift and carry up to 50 pounds occasionally and 25 pounds frequently.  He can sit for 6 hours in an 8-hour day and stand and/or walk for 6 hours in an 8-hour day. However, the claimant must avoid concentrated exposure to fumes.
>
> (6)   The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).
>
> (7)   The claimant was born on June 19, 1981 and was 26 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. (20 CFR 404.1563 and 416.963).
>
> (8)   The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416-964).
>
> (9)   Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).
>
> (10)  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the

>    claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).
>
>    (11)   The claimant has not been under a disability, as defined in the Social Security Act, from February 10, 2013, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(R. 21-31.)

## **Applicable Law**

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). The Act also provides that SSI disability benefits shall be available for aged, blind, or disabled persons who have income and resources below a specific amount. *See* 42 U.S.C. § 1381 *et seq*. "Disability" is defined in the Act as the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than" twelve months. *See* 42 U.S.C. § 423(d)(1)(A) (definition used in the DIB context); 42 U.S.C. § 1382c(a)(3)(A) (definition used in the SSI context).[1]

To facilitate a uniform and efficient processing of disability claims, the Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Administration's official Listing of Impairments found at 20 C.F.R. Part 404, Subpart P, Appendix 1, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing substantial gainful employment. *See* 20 C.F.R. § 404.1520 (DIB

---

[1] "[T]he definition of disability is the same under both DIB and SSI . . . ." *Mason v. Colvin*, No. 9:12-cv-1157-TLW-BM, 2013 WL 4042188, at *2 n.2 (D.S.C. Aug. 8, 2013) (citing *Emberlin v. Astrue*, No. 06-cv-4136, 2008 WL 565185, at *1 n.3 (D.S.D. Feb. 29, 2008)).

context); 20 C.F.R. § 416.920 (SSI context).  If an individual is found not disabled at any step, further inquiry is unnecessary. *See* 20 C.F.R. § 404.1520(a)(4) (DIB context); 20 C.F.R. § 416.920(a)(4) (SSI context); *see also Hall v. Harris*, 658 F.2d 260 (4th Cir. 1981).

A plaintiff is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. *See* SSR 82-62, 1982 WL 31386, at *3. The plaintiff bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5);  42 U.S.C. § 1382c(a)(3)(H)(i).  He must make a *prima facie* showing of disability by showing that he is unable to return to his past relevant work.  *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983); *see also Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. *See Grant*, 699 F.2d at 191. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy which the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert ("VE"). *Id.* at 191-92.

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner "are supported by substantial evidence and whether the correct law was applied."  *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *see also Richardson v. Perales*, 402 U.S. 389 (1971); 42 U.S.C. § 405(g); 42 U.S.C. § 1383(c)(3). Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence.

*Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing 42 U.S.C. § 405(g); *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). The phrase "substantial evidence" is defined as:

> such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Substantial evidence consists of more than a mere scintilla of evidence but may be less than a preponderance.

*Smith v. Chater*, 99 F.3d 635, 637-38 (4th Cir. 1996) (internal quotation marks and citations omitted).

Thus, it is the duty of this Court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that her conclusion is rational. *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## Discussion

The Plaintiff asserts the ALJ erred in the following five ways:

1. The ALJ failed to properly evaluate Mr. Gordon's fibromyalgia as required by SSR 12-2p.

2. The ALJ failed to properly examine the severity of Mr. Gordon's fibromyalgia in his RFC.

3. The ALJ failed to include substantial evidence in his RFC.

4. The ALJ improperly weighed medical evidence.

5. The ALJ failed to meet his burden at step five of the sequential evaluation process.

(Dkt. No. 26 at 1.)

### The ALJ's Evaluation of Mr. Gordon's fibromyalgia and its Severity

The Plaintiff argues that the ALJ did not conduct a proper SSR 12-2p analysis. (Dkt. No. 26 at 17-20.) The ALJ found that the Plaintiff's fibromyalgia did not "impose more than

minimal functional limitations" and therefore was "a non-severe impairment." (R. 24.)

"Although there is no medical listing for fibromyalgia, Titles II and XVI of Social Security Ruling 12-2p provide[ ] guidance on how the Commissioner develops evidence to establish that a person has a medically determinable impairment of fibromyalgia, and how to evaluate fibromyalgia in disability claims and continuing disability reviews." *Smith v. Colvin*, No. 2:14-cv-00042, 2015 WL 7571946, at *7 (W.D. Va. Nov. 24, 2015) (citing SSR 12-2p, 77 Fed. Reg. 43640-01 (July 25, 2012), available at 2012 WL 3104869). Ruling 12-2p defines fibromyalgia as a "complex medical condition characterized primarily by widespread pain in the joints, muscles, tendons, or nearby soft tissues that has persisted for at least 3 months." SSR 12-2p, 77 Fed. Reg. 43640-01.

SSR 12-2p states that the Commissioner will find a claimant has a medically determinable impairment ("MDI") of fibromyalgia if a physician has diagnosed the Plaintiff with fibromyalgia and has provided one of two specific sets of evidence to support her findings. 77 Fed. Reg. 43640-01. Additionally, "the physician's diagnosis" cannot be "inconsistent with the other evidence in the person's case record." (*Id.*) The first of the two specific sets of evidence to support the physician's finding requires (1) a history of widespread pain, (2) 11 of 18 positive tender points on physical examination, and (3) evidence that other disorders that could cause the symptoms or signs were excluded.  (*Id.*) In the alternative, the second of the two specific sets of evidence to support the physician's finding requires (1) a history of widespread pain, (2) "repeated manifestations of six or more [fibromyalgia] symptoms, signs, or co-occurring conditions, especially manifestations of fatigue, cognitive or memory problems ('fibro fog'), waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome", and (3) evidence that other disorders that could cause these repeated symptoms or signs were excluded. (*Id.*)

If the Commissioner determines that a claimant has an MDI of fibromyalgia, then it will be considered in the sequential process to determine if the person is disabled. SSR 12-2p, 77 Fed. Reg 43640-01. SSR 12-2p states the following regarding the consideration in the sequential process:

A. At step 1, we consider the person's work activity. If a person with FM[1] is doing substantial gainful activity, we find that he or she is not disabled.

B. At step 2, we consider whether the person has a "severe" MDI(s). If we find that the person has an MDI that could reasonably be expected to produce the pain or other symptoms the person alleges, we will consider those symptom(s) in deciding whether the person's impairment(s) is severe. If the person's pain or other symptoms cause a limitation or restriction that has more than a minimal effect on the ability to perform basic work activities, we will find that the person has a severe impairment(s).

C. At step 3, we consider whether the person's impairment(s) meets or medically equals the criteria of any of the listings in the Listing of Impairments in appendix 1, subpart P of 20 CFR part 404 (appendix 1). FM cannot meet a listing in appendix 1 because FM is not a listed impairment. At step 3, therefore, we determine whether FM medically equals a listing (for example, listing 14.09D in the listing for inflammatory arthritis), or whether it medically equals a listing in combination with at least one other medically determinable impairment.

D. Residual Functional Capacity (RFC) assessment: In our regulations and SSR 96-8p, we explain that we assess a person's RFC when the person's impairment(s) does not meet or equal a listed impairment. We base our RFC assessment on all relevant evidence in the case record. We consider the effects of all of the person's medically determinable impairments, including impairments that are "not severe." For a person with FM, we will consider a longitudinal record whenever possible because the symptoms of FM can wax and wane so that a person may have "bad days and good days."

E. At steps 4 and 5, we use our RFC assessment to determine whether the person is capable of doing any past relevant work (step 4) or any other work that exists in significant numbers in the national economy (step 5). If the person is able to do any past relevant work, we find that he or she is not disabled. If the person is not able to do any past relevant work or does not have such work experience, we determine whether he or she can do any other work. The usual vocational considerations apply.

---

[1] SSR 12-2p abbreviates fibromyalgia as "FM."

SSR 12-2p, 77 Fed. Reg. 43640-01.

The ALJ appears to have found that the Plaintiff's fibromyalgia was an MDI, but that it was non-severe. The ALJ stated as follows:

> Although the claimant exhibited 12/18 tenderpoints and was diagnosed with fibromyalgia in August of 2014, the claimant exhibited a normal gait and essentially normal range of motion of the joints upon physical examinations in August and September 2014.  There is no indication that the claimant reported significant fatigue related to his fibromyalgia.  He was started on Cymbalta in September 2014, and there is no evidence that the claimant sought treatment for significant fibromyalgia pain or tenderness after September 2014. (Exhibit 19F). I find the claimant's fibromyalgia does not impose more than minimal functional limitations and is therefore a non-severe impairment.

(R. 24.)  While the ALJ did not specifically cite to SSR 12-2p, it does appear that he found that the Plaintiff's fibromyalgia was an MDI.

Having determined that the Plaintiff's fibromyalgia was an MDI, the ALJ then had to determine the severity of the impairment.  "An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521.  Basic work activities, among other abilities, includes "[p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;" "[c]apacities for seeing, hearing, and speaking " and  "[u]nderstanding, carrying out, and remembering simple instructions." *Id.*  "An impairment should be labeled 'not severe only if it is a *slight abnormality* which has such a *minimal effect* on the individual that it would not be expected to interfere' with an applicant's ability to work." *Barksdale v. Colvin*, No. 4:13-CV-00036, 2014 WL 4052858, at *7 (W.D. Va. Aug. 14, 2014) (quoting *Evans v. Heckler,* 734 F.2d 1012, 1014 (4th Cir.1984)). A claimant establishing he has a severe impairment is "not a difficult hurdle for the claimant to clear…." *Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473, 474 n.1 (4th Cir. 1999).

The ALJ's finding that the Plaintiff's fibromyalgia was non-severe is not supported by substantial evidence. The ALJ first states, "Although the claimant exhibited 12/18 tenderpoints and was diagnosed with fibromyalgia in August of 2014, the claimant exhibited a normal gait and essentially normal range of motion of the joints upon physical examinations in August and September 2014." (R. 24.) Within the Fourth Circuit, courts have held "The primary symptom of fibromyalgia is chronic, widespread pain. Moreover, as the Second Circuit explained, 'physical examinations will usually yield normal results—a full range of motion, no joint swelling, as well as normal muscle strength and neurological reactions.'" *Smith v. Colvin*, No. 1:14-cv-04400-RBH, 2016 WL 1089302, at *7 (D.S.C. Mar. 21, 2016) (citing *Dowell v. Colvin*, No. 1:12-cv-1006, 2015 WL 1524767, at *3 (M.D.N.C. Apr. 2, 2015) (quoting *Green-Younger v. Barnhart*, 335 F.3d 99, 108-09 (2d Cir. 2003))). The ALJ's reliance on a normal gait and range of motion was error as the "absence of objective medical evidence to substantiate the diagnosis of fibromyalgia or its severity is basically irrelevant." *Smith v. Colvin*, No. 1:14-cv-04400-RBH, 2016 WL 1089302, at *7 (D.S.C. Mar. 21, 2016) (quoting *Kalmbach v. Comm'r of Soc. Sec.*, 409 F. App'x 852, 864 (6th Cir. 2011)).

The ALJ next states "[t]here is no indication that the claimant reported significant fatigue related to his fibromyalgia. He was started on Cymbalta in September 2014, and there is no evidence that the claimant sought treatment for significant fibromyalgia pain or tenderness after September 2014." (R. 24) These findings do not fully represent the record in this case. There are multiple notations in the Plaintiff's exam notes from August, 2014 through October, 2014 by Dr. Sofia Aksentijevich, the Plaintiff's treating rheumatologist, that the Plaintiff had severe fatigue. (R. 619, 660, 710.) The Plaintiff's physical therapy progress note for August 19, 2014, stated that the Plaintiff had chronic and fluctuating pain that limited his ability to care for his child. (R.

612.) On the same day, physical therapy records indicated that the Plaintiff was referred to physical therapy for numerous reasons including difficulty ambulating and lowered endurance. (R. 614.) In addition to Cymbalta, the Plaintiff was at times prescribed Lyrica[2] and Ultracet[3] for his Fibromyalgia. (R. 699, 706, 708, 711.) The record reflects that the Plaintiff continued seeking treatment through at least February 20, 2015. (R. 699.) The record from the Plaintiff's visit that day shows that he had another appointment the following month. (R. 700.)

The ALJ's single paragraph determining the severity of the Plaintiff's fibromyalgia did not reflect substantial evidence in the record. It improperly relied on objective evidence. The paragraph did not fully state the course of the Plaintiff's treatments and medications. The Plaintiff sought further treatment for fibromyalgia beyond September of 2014.[4] Therefore, the ALJ's determination that the Plaintiff's fibromyalgia was a non-severe impairment is not supported by substantial evidence.

The ALJ's classification of the Plaintiff's fibromyalgia as a non-severe impairment was not without consequence in his RFC assessment. In his RFC analysis, the ALJ never mentions the Plaintiff's fibromyalgia or related symptoms aside from assessing the medical source opinions. (R. 26-30.) In assessing the opinions of Dr. Spandofer and Dr. Aksentijevich, the ALJ again relied on the Plaintiff's lack of treatment after September 2014, which was not accurate,

---

[2] Lyrica is a "medication is used to treat pain caused by nerve damage due to diabetes or to shingles (herpes zoster) infection. It may also be used to treat nerve pain caused by spinal cord injury. This medication is also used to treat pain in people with fibromyalgia." *Lyrica*, http://www.webmd.com/drugs/2/drug-93965/lyrica-oral/details (last visited Jan. 19, 2017.)

[3] Ultracet is a medication "used to treat moderate to moderately severe pain. It contains 2 medications: tramadol and acetaminophen. Tramadol is similar to opioid (narcotic) analgesics." *Ultracet*, http://www.webmd.com/drugs/2/drug-21825/ultracet-oral/details (last visited Jan. 19, 2017.)

[4] The evidence of this further treatment and medications was contained in evidence considered by the Appeal's Council after being submitted by the Plaintiff's attorney. (R. 5.)

and the Plaintiff's lack of objective evidence, which is not appropriate under the law. (R. 29-30.) This court concludes that the ALJ's Decision is not supported by substantial evidence.

Because this court concludes that the ALJ erred in determining that fibromyalgia was a non-severe impairment and consequently did not sufficiently address fibromyalgia in his RFC analysis, this court does not reach the Plaintiff's other assignments of error, but does note that the Plaintiff's treating physician, Sofia Aksentijevich, submitted an opinion on the Plaintiff's capacity that varied greatly with the ALJ's findings of the Plaintiff's Residual Functional Capacity. (R. 675-685.)

## Recommendation

It is therefore **RECOMMENDED**, for the foregoing reasons, that the Commissioner's decision be **REVERSED** pursuant to sentence four of 42 U.S.C. § 405(g) and that the case be **REMANDED** for a new hearing consistent with this Report & Recommendation.

IT IS SO RECOMMENDED.

January 19, 2017

Charleston, South Carolina

_____
MARY GORDON BAKER
UNITED STATES MAGISTRATE JUDGE